## GARDNER v. UNITED STATES.

### Civ. No. 616.

District Court, M. D. Tennessee,
Nashville Division.

Sept. 25, 1946.

Cecil Sims and W. W. Berry, both of Nashville, Tenn., for plaintiff.

A. O. Denning, Asst. U. S. Atty., of Nashville, Tenn., for defendant.

DAVIES, District Judge.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact

1. The plaintiff, David W. Gardner, was and is a citizen and resident of Davidson County, Tennessee, and for several years has been engaged in the construction business under the trade name of Gardner Construction Company.

2. The plaintiff's claim is for money alleged to be due and owing to plaintiff under a written contract with the defendant for the construction and erection of a general hospital located at Humboldt, Tennessee, the amount of the claim being less than $10,000.

3. In August, 1943, the defendant, acting through the Federal Works Agency, Public Buildings Administration, Emergency Operations Unit, publicly advertised for bids for the construction and erection of a 50-bed general hospital at Humboldt, Tennessee, upon designated terms, conditions, plans and specifications, and all amendments thereof and addenda thereto on file in the office of Dent & Aydelott, Architects, 801 National Bank Building, Memphis, Tennessee, and plaintiff in due course made application for a full and complete copy of

said plans and specifications and all amendments thereof, and the defendant's agents furnished to plaintiff a complete copy of such plans and specifications, including Addendum No. 1 attached thereto as part of said specifications, all of which would be used by plaintiff as a basis for submitting his bid for the construction of said hospital. Said specifications provided in part as follows:

"Section 10, Rough Carpentry:

"A. General

"1. This work shall include all labor and materials necessary to complete the work according to the plans and specifications. Furnish all scaffolding, tools, and other equipment as required for the proper completion of the work.

\* \* \* \* \* \*

"B. Materials and Applications

\* \* \* \* \* \*

"4. All wall sheathing and wood subflooring shall be 1" x 8" shiplap No. 2 common Short Leaf Yellow Pine applied diagonally. All building paper used between siding and sheathing shall be 15 lb. saturated rag felt. Building paper between finish floor and sub-floor shall be 30 lbs. saturated rag felt.

\* \* \* \* \* \*

"Section 12, Interior Finished Carpentry and Millwork:

"A. General

"1. The work shall include all labor and materials necessary to complete the work according to the plans and specifications.

"2. Carefully examine the plans and specifications, and especially details pertaining to concrete, brickwork, etc., ascertaining dimensions and details. It is important that possible discrepancies between the plans and specifications or between the various trades dependent on carpentry work foreseen be reported to the Constructions Engineer.

\* \* \* \* \* \*

"8. The contractor shall provide and install 1" x 4" tongue and Groove B and Better Yellow Pine flooring over all subflooring where linoleum finish flooring is required. This flooring shall be blind nailed and sanded to a smooth even surface before installation of linoleum finished floor.

\* \* \* \* \* \*

"Section 19, Linoleum:

"A. General

"1. Furnish all necessary labor and materials for the installation complete of all linoleum floors, bases and wainscots, counter tops, and other linoleum work according to the plans and specifications.

\* \* \* \* \* \*

"B. Materials and application

\* \* \* \* \* \*

"6. 'Armstrong's' or equal lining felt shall be bonded to the wood subfloor with 'Armstrong' or equal linoleum paste."

4. The aforesaid Addendum No. 1, issued prior to the receipt of bids, and on which all bids, including that of plaintiff, were made, changed the above specifications as follows:

"Section 19, Linoleum

"Omit all linoleum specified for floors and bases but retain the linoleum for wainscots, counter tops and other linoleum work as shown and specified.

"Where linoleum is indicated for floors and bases, substitute asphalt title as specified below:

"Section 19A, Asphalt Tile

"1. Scope. Where linoleum coverings for floors and bases are indicated on drawings, substitute asphalt tile coverings as herein specified.

\* \* \* \* \* \*

"5. Lining Felt. Asphalt-saturated and weighing at least 1.40 pounds per square yard, is required over wood subfloors; the felt to be pasted to the subfloor, and the tile stuck to the felt.

"6. Laying. The subfloors shall be clean and dry.

"7. Wood subfloors shall be sound and have close, flush joint. Cover with lining felt pasted over its entire under surface. Lay the felt with butted joints and brush or roll to remove all air and insure permanent adhesion."

5. Plaintiff filed a formal bid dated October 29, 1943, for the total aggregate base

sum of $336,400, and the defendant awarded the contract to plaintiff on said bid and in due course a written contract was entered into between the parties for the construction of said hospital for said sum of $336,400, said contract being dated November 10, 1943.

6. During the performance of the contract, a controversy arose between the plaintiff and the Construction Engineer in charge of the project as to the type of wood floor that was specified to be used under the asphalt tile which had by Addendum No. 1 been substituted in lieu of linoleum for finished floors and bases, it being the insistence of plaintiff that the specifications, including Addendum No. 1, did not require a top or finished wood floor under the asphalt tile; on the other hand, it being the insistence of the Construction Engineer in charge of the project that, according to his interpretation, the specifications, including Addendum No. 1, required the installation under the asphalt tile of a finished floor of 1" x 4" Tongue and Groove B and Better Yellow Pine over all subflooring where linoleum had been specified before the issuance of Addendum No. 1. The plaintiff was required by the Construction Engineer in charge of the project to install, and he did install, a finished floor of 1" x 4" Tongue and Groove B and Better Yellow Pine over all subflooring where linoleum had been specified before the issuance of said Addendum No. 1, at a cost to plaintiff of $4,248.37, and it is to recover this amount, with interest, that the plaintiff's action was brought.

7. The general conditions upon which all bids were required to be based, which were part of the specifications and which were incorporated by reference into the contract between the parties, provided in part as follows:

"7. Definitions: (a) The term 'Contracting Officer' as used herein shall mean the Commissioner of Public Buildings, Public Buildings Administration, Federal Works Agency, or his authorized representative.

\* \* \* \* \* \*

"13(b). The decision of the Contracting Officer or his authorized representative as to the proper interpretation of the drawings and specifications shall be final. For this purpose the Supervising Engineer, Public Buildings Administration, is the authorized representative of the Contracting Officer."

8. The controversy between the plaintiff and the Construction Engineer in charge of the project referred to in Paragraph 6 of these Findings, was submitted first to the Engineer Adviser in Charge, Emergency Operations Unit, who concurred with the Construction Engineer in his interpretation of the specifications, and then the controversy was finally submitted to the Contracting Officer, who by letter dated January 3, 1945, informed plaintiff of his decision that the specifications properly interpreted required the installation under the asphalt tile of a finished floor of 1" x 4" Tongue and Groove B and Better Yellow Pine flooring over all subflooring, where linoleum had been specified before the issuance of Addendum No. 1. No appeal was ever taken from the decision of the Contracting Officer as set forth in said letter.

## Conclusions of Law

■ 1. This Court has jurisdiction of the parties and of the subject matter of the action by virtue of the Tucker Act, 28 U.S. C.A. § 41(20).

2. The only question in the case is one of law, that is, the construction and proper interpretation of the contract between the parties, and especially those parts of the contract contained in the specifications quoted in the foregoing Findings of Fact. It is clear, and the Court concludes, that before the issuance of Addendum No. 1 the specifications required the installation of 1" x 4" Tongue and Groove B and Better Yellow Pine flooring over all subflooring where linoleum finish flooring was required. It is equally clear that there is nothing in Addendum No. 1, when considered in the light of all the other specifications, that in any way changes the type of flooring from that specified for use in connection with the linoleum. The main part of Addendum No. 1, that is, Section 19A, merely provided substitution of asphalt tile coverings for linoleum coverings for floors and bases in all cases where linoleum coverings were indicated on the drawings.

3. The Court concludes that the Construction Engineer in charge of the project was entirely correct in his interpretation of the specifications and when he called upon the plaintiff to comply therewith by installing 1″ x 4″ Tongue and Groove B and Better Yellow Pine flooring over all subflooring where asphalt tile was required by Addendum No. 1. And the Court further concludes that the Engineer Adviser in Charge of the Emergency Operations Unit and the Contracting Officer were likewise correct in their decisions which confirmed the interpretation by the Construction Engineer in charge of the project of the specifications, including Addendum No. 1, and hence, that neither of these agents of the defendant acted arbitrarily or erroneously.

4. The suit should be dismissed at the plaintiff's cost.

Judgment will be entered accordingly.